# EXHIBIT 1



Law

Level 4, 555 Lonsdale Street,
Melbourne, Victoria 3000
T   03 8600 8888
F   03 8600 8899
W   kcllaw.com.au

JEG:DLM:190858

**Radaro Inc.**

**and**

**ShiftPixy Inc.**

# Software Licence and Services Agreement



Liability limited by a scheme approved under Professional Standards Legislation

## Table of Contents

| | | |
|---|---|---|
| 1. | Definitions and Interpretation | 1 |
| 2. | Term | 7 |
| 3. | Licence of Software | 7 |
| 4. | Licence of Existing Radaro Software | 7 |
| 5. | Sub-licence to Customers | 7 |
| 6. | Provision of access and Specific Services | 8 |
| 7. | Licence Conditions | 9 |
| 8. | Data and access | 10 |
| 9. | Privacy and Security | 11 |
| 10. | Fees and Charges | 11 |
| 11. | Training | 12 |
| 12. | Nature of Support Services | 12 |
| 13. | Support Availability | 12 |
| 14. | Support Exclusions | 13 |
| 15. | Updates and New Releases | 14 |
| 16. | Content Creation for ShiftPixy | 14 |
| 17. | Additional Services | 14 |
| 18. | Confidentiality Obligations | 15 |
| 19. | Confidentiality Exclusions | 15 |
| 20. | Return of Confidential Information | 16 |
| 21. | Intellectual Property Rights | 16 |
| 22. | Insurance | 17 |
| 23. | Liability | 17 |
| 24. | Non-compete, good faith and co-operation | 19 |
| 25. | Termination | 19 |
| 26. | Force Majeure | 20 |
| 27. | Sub-Contracts | 21 |
| 28. | Assignment and Novation | 21 |
| 29. | Waiver | 21 |
| 30. | Variation | 21 |
| 31. | Dispute Resolution | 21 |
| 32. | Miscellaneous | 22 |
| 33. | Notices | 23 |
| 34. | Execution | 23 |
| SCHEDULE 1 | | 25 |
| SCHEDULE 2 | | 26 |
| SCHEDULE 3 | | 32 |

Ex. 1 - 014
8:20-cv-01143-JVS-DFM

**This Agreement is made between:**


**Radaro Inc.**
of 6872 Highover Dr. Chanhassen, Minnesota,
United States of America 55317

("**Radaro**")

and

**ShiftPixy Inc.**
of 1 Venture, Irvine, California 92618, United States
of America

("**ShiftPixy**")

## Recitals

A.     Radaro is the licensee of (with the rights to sub-license) the Intellectual Property Rights in the Software and the Existing Radaro Software.

B.     ShiftPixy has requested Radaro to grant it a licence to use the Software to assist ShiftPixy's business referred to in item 3 of Schedule 1 (Key Details) and to provide the Services.

C.     Radaro has agreed to make the Software available to ShiftPixy as a service and grant ShiftPixy a licence to use the Software, and to provide the Services, subject to the terms and conditions of this Agreement.

## Operative part

## 1.     Definitions and Interpretation

1.1     Definitions

In this Agreement:

(a)     "**Affiliate**" means, with respect to either Party, any person, partnership, corporation, organisation or entity that directly or indirectly controls, is controlled by or is under common control of, a Party.  For the purposes of this definition only, "control" means (a) to possess, directly or indirectly, the power to direct the management or policies of a Party, whether through ownership of voting securities or by agreement relating to voting rights or corporate governance, or (b) to own, directly or indirectly, more than fifty percent (50%) of the outstanding voting securities or other ownership interest of such Party.

(b)     "**Agreement**" means this agreement and includes the Schedules and the recitals;

(c)      "**Background IP**" means;

(i)     in the case of Radaro, all Intellectual Property Rights subsisting in or relating to the Software owned by or licensed to Radaro and in existence at the Commencement Date; and

(ii)    in the case of ShiftPixy, all Intellectual Property Rights owned by or licensed to ShiftPixy and in existence at the Commencement Date and/ or created after the Commencement Date other than by or on behalf of Radaro and excludes Foreground IP;

(d)    "**Build Phase**" has the meaning contemplated in item 1 of Schedule 3 (Fees);

(e)    "**Business Day**" means a day other than a Saturday or Sunday when banks are open for business in the United States of America;

(f)    "**Commencement Date**" means the date set out in item 4 of Schedule 1 (Key Details);

(g)    "**Confidential Information**" means the following, whether or not in material form, disclosed or made available by one Party (or an Affiliate of that Party) (a "**disclosing party**") to the other (or an Affiliate of that Party) (a "**recipient**") whether prior to or after the Commencement Date:

(i)    know-how and trade secrets of the disclosing party (whether or not reduced to material form);

(ii)    Intellectual Property Rights of the disclosing party;

(iii)    technical information and technical drawings of the disclosing party;

(iv)    financial, business, product and marketing information and strategies of or relating to the disclosing party;

(v)    details of the prices at which the disclosing party sells, purchases or proposes to sell or purchase goods or services;

(vi)    customer and supplier details relating to a disclosing party;

(vii)    any other information of a confidential nature relating to a disclosing party;

(viii)    all copies of, or part of all notes and other records prepared by the recipient of any information disclosed by a disclosing party based on or incorporating the information referred to in clauses (i) to (vii) above; and

in relation to Radaro, information in connection with:

(ix)    the design, specification and content of the Software;

(x)    the Intellectual Property Rights in the Software;

(xi)    the personnel, policies or business strategies of Radaro; and

(xii)    the terms upon which the Software is being supplied and supported under this Agreement;

(h)    "**Consequential Loss**" means loss or damage arising from a breach of contract, tort (including negligence), a violation or act not permitted by statute or any other basis in law or equity including the following:

(i)    loss of profits;

(ii)     loss of revenue;

(iii)    loss of production;

(iv)    loss or denial of opportunity;

(v)     loss of access to markets;

(vi)    loss of goodwill;

(vii)   loss of business reputation, future reputation or publicity; damage to credit rating;

(viii)  loss resulting from data breach or security breach;

(ix)    loss of use;

(x)     or any similar loss whether or not in the reasonable contemplation of the parties at the time of execution of this agreement;

(i)   "**Customer**" means a client of ShiftPixy to whom the Software is sublicensed in accordance with clause 5;

(j)   "**Documentation**" means any operating manuals and other printed and/or electronic materials (including users' manuals, flowcharts, drawings and software listings, which are designed to assist or supplement the understanding or use of the Software) that may be provided or made available by Radaro to ShiftPixy during the Licence Term;

(k)   "**Driver User**" or "**Driver**" means a User who is engaged by a Customer to use the Software in connection with driving, transport and/or delivery services;

(l)   "**Driver Usage Account Fees**" has the meaning ascribed to it in item 4 Schedule 3 (Fees);

(m)   "**End Customer**" means a client of a Customer who is engaged by the Customer to use the Software or other person permitted by a Customer to use the Software;

(n)   "**Existing Radaro Software**" means the software platform known as "Radaro" and unless the context requires otherwise:

(i)     refers to any new releases, modifications, enhancements or updates of it;

(ii)    includes the Documentation (if applicable); and

(iii)   is a reference to the hosted service provided by Radaro that is associated with the Software including:

A.     web portal access;

B.     iOS and Android mobile applications; and

C.     API access;

(o)   "**Exit Fee**" has the meaning ascribed to it in clause 25.2;

(p)   "**Fees**" means the fees and charges ShiftPixy is required to pay Radaro under this Agreement including the:

    (i)   Licence Fees;

    (ii)   Instance Build Fee;

    (iii)   Specific Services Fees;

    (iv)   Driver Usage Account Fees; and

    (v)   any additional charges or other fees and charges that may be specified in this Agreement or otherwise agreed to from time to time between the Parties.

(q)   "**Force Majeure**" means a circumstance beyond the reasonable control of the Parties that results in a Party being unable to observe or perform on time an obligation under this Agreement.  Such circumstances include, but are not limited to:

    (i)   acts of God, lightning strikes, earthquakes, floods, storms, explosions, fires and any natural disaster;

    (ii)   acts of war, acts of public enemies, terrorism, riots, civil commotion, malicious damages, sabotage and revolution; and

    (iii)   strikes;

    (iv)   internet outage; or

    (v)   outage or malfunction of third party systems that support the Software (including, without limitation, Amazon Web Services, Google or internet service providers).

(r)   "**Foreground IP**" means all Intellectual Property Rights subsisting in or relating to the Software or the Services to be provided, pursuant to this Agreement and to the extent that those come into existence after the Commencement Date, including but not limited to those rights in materials developed in accordance with clause 16;

(s)   "**Initial Term**" means the initial period of the licence of the Software as specified in item 5 of the Schedule 1 (Key Details);

(t)   "**Instance Build Fee**" has the meaning ascribed to it in item 1 of Schedule 3 (Fees)

(u)   "**Intellectual Property Rights**" means all present and future rights conferred by statute, common law or equity in or in relation to any copyright, trademarks, designs, patents, circuit layouts, business and domain names, inventions, and other results of intellectual activity in the industrial, commercial, scientific, literary or artistic fields;

(v)   "**Licence Fees**" are the fees set out in item 2 of Schedule 3 (Fees);

(w)   "**Licence Term**" means the Initial Term and any renewal agreed upon in accordance with clause 3.2 of this Agreement;

(x)      "**Loss**" means losses, liabilities, damages, costs, charges and expenses and includes taxes;

(y)      "**OLO**" means Mobo Systems Inc. trading as "Olo" conducting the business of a digital ordering platform for restaurant markets;

(z)      "**Party**" means a party to this Agreement;

(aa)     "**Radaro's Normal Business Hours**" means 0900 to 1700 (CST) on Business Day;

(bb)     "**Schedule**" means a schedule to this Agreement;

(cc)     "**Services**" means the services which Radaro agrees to provide under this Agreement, including the provision of access to the Software, the Specific Services and any other services provided for in this Agreement;

(dd)     **ShiftPixy Access Facilities**" means telecommunications, networks, systems and any other facilities used or required by or on behalf of ShiftPixy for accessing and making use of the Software or any Services other than any facilities actually provided by Radaro from time to time under this Agreement;

(ee)     "**ShiftPixy Authorised Contact**" means the person(s) identified in item 2 of Schedule 1 (Key Details), or as otherwise agreed between the parties in writing from time to time;

(ff)     "**ShiftPixy Customer Data**" means the data to which Radaro is provided access to by ShiftPixy for the purposes of the Services and ShiftPixy's use of the Software;

(gg)     "**Software**" means the Software, Instance (further details of which appear in Schedule 2 – Software and Services) and unless the context requires otherwise;

  (i)      refers to any new releases, modifications, enhancements or updates of it during the Licence Term;

  (ii)     includes the Documentation;

  (iii)    includes any software content created in accordance with clause 16; and

  (iv)     is a reference to the hosted service provided by Radaro that is associated with the Software including:

    A.      web portal access;

    B.      iOS and Android mobile applications; and

    C.      API access;

(hh)     "**Software Instance**" means the white-labelled instance of the Existing Radaro Software provided by Radaro under this Agreement being unique to ShiftPixy, and is designed to be specifically used by ShiftPixy in accordance with this Agreement;

(ii)  "**Specific Services**" means any services (more particularly described in item 3, Schedule 2 – Software and Services) in addition to providing access to the Software, which, to the extent specified, may include implementation, customisation, on-boarding, support, training and development services;

(jj)  "**Specific Services Fees**" has the meaning ascribed to it in item 3 of Schedule 3 (Fees);

(kk)  "**Statement of Work**" has the meaning ascribed to it in clause 17;

(ll)  "**Support Services**" means the support services to be provided by Radaro to ShiftPixy in respect of the Software as detailed in this Agreement;

(mm)  "**Territory**" means the continent of North America;

(nn)  "**User**" means a user of the Software including (without limitation) employees or Customers of ShiftPixy, or contractors, agents or other third parties engaged by ShiftPixy to use the Software (or to whom ShiftPixy grants, permits or allows access to the Software), Driver Users, End Customers, or another person who may be permitted (in writing) by Radaro to use the Software; and

(oo)  "**ZenDesk**" means the digital support ticketing and customer service system operated by ZenDesk, Inc and its subsidiaries of 1019 Market St, San Francisco, California, 94103, United States of America.

1.2  **Interpretation**

In this Agreement, unless the contrary intention appears:

(a)  headings are for ease of reference only and do not affect the meaning of this Agreement;

(b)  singular includes the plural and vice versa;

(c)  other grammatical forms of defined words or expressions have corresponding meanings;

(d)  a reference to a clause or a paragraph is a reference to a clause or paragraph in this Agreement;

(e)  a reference to a document, deed or agreement, including this Agreement, includes a reference to that document, deed or agreement as novated, altered or replaced from time to time;

(f)  a reference to a person includes any type of entity or body of persons, whether or not it is incorporated or has a separate legal entity, and any executor, administrator or successor in law of the person;

(g)  monetary references are to the currency of the United States of America;

(h)  monetary references to sums payable under in this Agreement are exclusive of any tax, including but not limited to any sales tax, imposed by the relevant jurisdiction;

(i)  references to times are to the time in Minnesota, United States of America (Central Standard Time); and

(j)     a term or expression starting with a capital which is defined in these definitions has the meaning given to it in these definitions.

## 2.    Term

This Agreement commences on the Commencement Date and continues for the Licence Term.

## 3.    Licence of Software

3.1    In consideration of the payment by ShiftPixy of the Licence Fees, Radaro grants to ShiftPixy a non-exclusive, non-transferable and sub-licensable (subject to clause 5) licence to use the Software strictly in accordance with the terms and conditions of this Agreement within the Territory for the Licence Term.

3.2    The Parties may agree in writing and by signature to renew this Agreement for an additional period of 12 months following the expiry of the Licence Term.

## 4.    Licence of Existing Radaro Software

4.1    The parties acknowledge and agree that Radaro has granted to ShiftPixy a non-exclusive, non-transferable and sub-licensable (subject to clause 5) licence to use the Existing Radaro Software during the Build Phase for the purpose of conducting a trial of the Existing Radaro Software (on which the Software Instance is based) and on-boarding of customers.

4.2    ShiftPixy agrees that on expiry of the Build Phase or upon termination of this Agreement for any reason, (whichever event is earlier), all of its rights in respect of the Existing Radaro Software (including its right to access the Software) and the Services will end.

## 5.    Sub-licence to Customers

5.1    The sub-licensing contemplated under this clause 5 is to enable ShiftPixy and its Customers to use the Software, which offers a white labelled customer interface, in its ordinary course. For example, ShiftPixy is permitted to sublicense the Software (in accordance with this clause 5) to a Customer to enable that Customer to incorporate its own business branding in the Software interface (such as the End Customer tracking feature).

5.2    ShiftPixy may, by written agreement, grant a sub-licence to its Customers to use the Software and the Existing Radaro Software in a manner consistent with the terms and conditions of this Agreement.

5.3    Except as expressly set out in this Agreement, ShiftPixy is not entitled to assign or sub-license any of its rights under this Agreement without prior written approval of Radaro.

5.4    Notwithstanding any other provision of this Agreement, ShiftPixy may rebrand the Software to contain the branding of a Customer on the platform of the Software visible to End Customers. For the avoidance of doubt, other than the rebranding permitted under this clause, any other modification of the Software is expressly prohibited.

## 6.   Provision of access and Specific Services

6.1   Radaro will make available to ShiftPixy the cloud-hosted Software for the Licence Term.

6.2   Radaro will provide ShiftPixy with access to the Software in the manner specified in item 2 of Schedule 2 (Software and Services).

6.3   Radaro will ensure that the Software is compatible with the browser and device types and versions specified in item 5 of Schedule 2 (Software and Services), subject to ShiftPixy complying with its obligations under clause 15 in respect of accepting updates and new releases.

6.4   Radaro will provide to ShiftPixy, the Services described in item 3 of Schedule 2 (Software and Services) to the extent specified in that item 3.

6.5   To the extent specified in item 4 of Schedule 2 (Software and Services), Radaro may provide ShiftPixy with any Specific Services upon request and by agreement of the parties.

6.6   Except for Radaro's obligation to give ShiftPixy access to the Software, if any third-party consent (which may include, without limitation, consents for Radaro to access, use, store and disclose ShiftPixy Customer Data) is required for Radaro to provide the Software or the Services, ShiftPixy must procure such consent for Radaro.   Radaro's obligations to provide the Software or the Services are conditional on such consent having been procured.

6.7   ShiftPixy must comply with Radaro's reasonable requests for confirmation of compliance with its obligations for any consent under the previous sub-clause.

6.8   ShiftPixy must comply with access and use procedures (including as to communications and security) in connection with the Software as Radaro notifies ShiftPixy from time to time.

6.9   Other than as expressly permitted by this Agreement, ShiftPixy must not do or permit anything to be done in respect of the Software. Without limiting the preceding sentence, ShiftPixy must not:

(a)   Remove or modify any Software markings or any notice of Radaro's rights (including copyright and trademark rights);

(b)   Make programs or materials resulting from the Software or the Services available to any third party for use in the third party's business;

(c)   Commercially exploit the Software (including by making it available to any third party); and

(d)   Distribute or transmit any part of the Software by any means.

6.10  ShiftPixy must use reasonable efforts to prevent unauthorised third parties from accessing the Software.

6.11  ShiftPixy agrees that the access rights of any individual User permitted to use the Software (for example, on a named or password-enabled basis) cannot be shared by more than one individual, unless the right is reassigned in its entirety to another individual authorised User, in which the case the first User will no longer have any right to access all or any part of the Software.

6.12   ShiftPixy must not make or permit any use of the Software in a way which is unacceptable which include uses that:

    (a)    involve anything which is false, defamatory, harassing or obscene;

    (b)    involve the sending of unsolicited electronic messages contrary to spam legislation;

    (c)    would involve the contravention of any person's rights, including intellectual property rights or privacy rights;

    (d)    may offend any laws; or

    (e)    may otherwise be regarded by Radaro, on reasonable grounds, to be unacceptable (Radaro may, from time to time, notify ShiftPixy of the circumstances which it regards as unacceptable).

6.13   Radaro may immediately suspend all access to the Software or any part of the Services, or remove or disable access to anything that contravenes the restrictions in clause 6.12 or is otherwise in breach of this Agreement, in response to ShiftPixy's use of the Software in a manner that violates clause 6.12.

6.14   Radaro may suspend all access to the Software and/or any part of the Services by giving one month's notice to ShiftPixy if ShiftPixy does not pay the Fees in accordance with clause 10.

6.15   ShiftPixy must ensure that the ShiftPixy Authorised Contact is sufficiently qualified, is empowered to make decisions on behalf of ShiftPixy in relation to matters that are the subject of this Agreement and is reasonably available at mutually agreed times during Radaro's Normal Business Hours.

6.16   Radaro is not required to provide any hardware or peripherals to ShiftPixy and it is the sole responsibility of ShiftPixy to obtain and maintain any hardware and peripherals necessary or desirable to optimally operate the Software.

## 7.   Licence Conditions

7.1   ShiftPixy must not use the Software contrary to any standard operating procedures that may be notified in writing in advance by Radaro, or any other restrictions set out in this Agreement.

7.2   ShiftPixy must not sell, rent, lease, sub-license (subject to clause 5) or transfer or distribute any copies of the Software to, or permit the use of the Software by, any parties other than ShiftPixy.

7.3   ShiftPixy must not copy, alter, modify or reproduce the Software except to the extent otherwise authorised by this Agreement or as expressly authorised under California law. ShiftPixy must not reverse assemble or reverse compile or directly or indirectly allow or cause a third party to reverse assemble or reverse compile the whole or any part of the Software, nor create any derivative works based on the Software.

7.4   ShiftPixy must not (whether by itself of through a third party) modify or alter the Software or merge all or any part of the Software with any other software, without Radaro's prior written permission or except as otherwise allowed under this Agreement.

7.5 ShiftPixy must supervise and control the use of the Software in accordance with the terms of this Agreement and must ensure that:

(a) all Users are made explicitly aware of the terms and conditions (excluding sensitive commercial terms) of this Agreement; and

(b) ShiftPixy enters into separate, independent agreements with each User that it permits to use the Software, and such agreements will be consistent with the terms and conditions of this Agreement ("**third party agreements**"). For the avoidance of doubt, no third party agreement will in any way bind Radaro, and ShiftPixy must enter into the third party agreements in its own right;

(c) any proposed third party agreements must be provided to Radaro for its prior approval before such third party agreements are provided to prospective third parties for their review and execution in order to permit Radaro to assess compliance with this clause 7.5.

7.6 ShiftPixy is solely responsible for and fully liable to Radaro for the acts or omissions of Users in connection with the Software.

7.7 The Software must be integrated within and used only in conjunction with ShiftPixy's existing software platform. For the avoidance of doubt, no licence is granted by Radaro to ShiftPixy under this Agreement to use the Software as a stand-alone product outside of and separate from ShiftPixy's existing software platform. The parties may enter into negotiations (in good faith) to reach an agreement (independent of this Agreement) on separate commercial terms in respect of a stand-alone version of the Software that may be used by ShiftPixy.

7.8 Radaro will only be obliged to support the Software by providing advice, training, error correction, modifications, updates, new releases or enhancements to the extent specified in this Agreement.

## 8. Data and access

8.1 Radaro agrees, subject to the operation of this clause, that ShiftPixy Customer Data is ShiftPixy's Confidential Information.

8.2 Radaro will, on reasonable notice, make ShiftPixy Customer Data and related data, documentation or records maintained on behalf of ShiftPixy, available for inspection by ShiftPixy or its auditors.

8.3 ShiftPixy agrees to pay any Fees invoiced by Radaro in respect of the services provided in clause 8.2.

8.4 ShiftPixy has the sole responsibility for the accuracy, quality, integrity, legal compliance, reliability, appropriateness and rights ownership in all ShiftPixy Customer Data.

8.5 ShiftPixy acknowledges and agrees that the Software and the Services do not detect faulty or aberrant input data and do not take into account all of the matters that should be considered in decision making regarding matters of relevance to ShiftPixy's business.  ShiftPixy warrants to Radaro that it will not permit any access to, or use of, the Software or Services unless it has in place appropriate strategies, in addition to (and not reliant on) its use of the Software and Services to manage all risks attendant on its business.

8.6     ShiftPixy is responsible for providing its own ShiftPixy Access Facilities. ShiftPixy warrants to Radaro, and must ensure, that all ShiftPixy Access Facilities meet the security standards required by Radaro from time to time and are and will remain free from any circumstances (including viruses) which may adversely affect Radaro, the Software or the Services and are otherwise reasonably appropriate for use in conjunction with the Software and Services.

8.7     Third party facilities, including software programs, may be necessary or appropriate for access to, or use with, the Software.  ShiftPixy agrees that its right to make any use of such facilities is governed by the terms of the relevant third-party licence/services agreement and not by this Agreement.

## 9.     Privacy and Security

9.1     In performing this Agreement, Radaro will comply with its privacy policy (as in force from time to time).  Radaro's privacy policy as at the date of this Agreement is available at www.radaro.com.au.  Radaro's privacy terms are subject to change from time to time, provided that any such change will not materially reduce the level of privacy protection for ShiftPixy Customer Data during the period for which any Fees have been paid.

9.2     To the extent permissible by law, and subject to Radaro's privacy policy, Radaro may provide the Services from any location, and/or through the use of contractors, worldwide.

9.3     Without limiting clause 6.6, ShiftPixy must obtain any consents relevant to its use of the Services and Software, including those in relation to the collection, use, disclosure and storage of personal information of any individual whose personal information may be included in ShiftPixy Customer Data.

9.4     Radaro will use commercially reasonable security technologies in providing the Software and any allied services. ShiftPixy must comply with any applicable security guidelines reasonably issued by Radaro and reasonable procedures Radaro makes known to ShiftPixy.

9.5     ShiftPixy agrees and acknowledges that Radaro does not control the transfer of data over telecommunications facilities, including the internet, and Radaro does not warrant secure operation of the Software or that security technologies will be sufficient to always prevent third party disruptions.

9.6     ShiftPixy is solely responsible for its use, supervision and management of the Software.

9.7     ShiftPixy must use commercially reasonable endeavours to protect the Software from misuse, damage, destruction or any form of unauthorised use or theft.

## 10.   Fees and Charges

10.1    ShiftPixy must pay the Fees within the timeframe set out in items 2 to 4 inclusive of Schedule 3 (Fees) as applicable, or otherwise within 30 days after the date of Radaro's invoice to ShiftPixy, using the method of payment referred to in item 5 of Schedule 3 (Fees).

10.2    ShiftPixy must pay Radaro such Fees as Radaro invoices from time to time for the supply of goods or services not expressly required by this Agreement or (without limiting Radaro's remedies at law) which were either required by ShiftPixy or incurred

by Radaro as a result of carrying out any works which were reasonably appropriate in connection with ShiftPixy's non-performance of this Agreement.

10.3  If ShiftPixy disputes the whole or any portion of the amount claimed in an invoice submitted by Radaro, ShiftPixy must pay the portion of the amount stated in the invoice which is not in dispute and must notify Radaro in writing (within fourteen days of receipt of the invoice) of the reasons for disputing the remainder of the invoice. If it is resolved that some or all of the amount in dispute ought to have properly been made paid at the time of the first invoice, then ShiftPixy must pay the amount finally resolved.

10.4  ShiftPixy must pay Radaro interest on any other overdue amount payable under or in connection with this Agreement at the rate of 5%.

10.5  Radaro will provide ShiftPixy with an invoice in relation to the provision of goods and services not expressly required by this Agreement within seven days of any such supply.

## 11.  Training

11.1  If specified in item 3 of Schedule 2 (Software and Service), Radaro will provide to ShiftPixy basic "train the trainer" training in relation to the Software to an individual (or if more than one, individuals up to a number agreed to by Radaro) nominated by ShiftPixy.

11.2  ShiftPixy is responsible, at its own cost, for providing and must provide further training to its staff (other than the individuals nominated in clause 11.1) in connection with the Software.

## 12.  Nature of Support Services

12.1  Support Services will be provided by Radaro to ShiftPixy for the Licence Term in accordance with the tiered levels of support set out in item 4 of Schedule 2 (Software and Services).

12.2  Subject to clauses 12.3 and 12.4, Radaro will provide support for the Software which will, at the reasonable discretion of Radaro, take the form of:

(a)      provision of the Documentation;

(b)      technical support provided through a dedicated ZenDesk support system in accordance with ZenDesk's standard business operating procedures; and

(c)      "bug fixes" from time to time (at no additional cost).

12.3  ShiftPixy must offer in-house support services to all Users by provision of its own competent, trained and readily accessible help desk services, and ShiftPixy must seek to address any support issue internally using these resources before requesting assistance from Radaro.

12.4  The parties agree that any Support Services not designated as being "at no additional cost" will attract a charge in accordance with the provisions of this Agreement.

## 13.  Support Availability

13.1  Radaro will use its reasonable commercial efforts to provide the Support Services during Radaro's Normal Business Hours in accordance with the tiered levels of support set out in item 4 of Schedule 2 (Software and Services).

13.2  Radaro does not warrant to ShiftPixy that it will be capable of promptly receiving, processing or otherwise acting upon a request for support which is made outside Radaro's Normal Business Hours or that it can provide on-site Support Services outside Radaro's Normal Business Hours.

13.3  Immediately after making a request for Support Services which may involve error correction or program modification, ShiftPixy must give Radaro a documented example of the defect or error.

13.4  ShiftPixy must, if so requested by Radaro, give Radaro a listing of output and any other data which Radaro requires in order to reproduce operating conditions similar to those present when any alleged defect or error in the Software was discovered.

## 14.  Support Exclusions

14.1  Without limiting any other provision of this Agreement, the Support Services required to be provided by Radaro under this Agreement do not include:

(a)  correction of errors or defects caused by operation of the Software in a manner other than would be reasonably be contemplated by the parties;

(b)  correction of errors or defects caused by modification, revision, variation, translation or alteration of the Software not authorised by Radaro;

(c)  correction of errors or defects caused by the use of the Software by a person not authorised by Radaro;

(d)  correction of errors caused in whole or in part by the use of computer programs other than the Software;

(e)  correction of errors caused by the failure of ShiftPixy to provide suitably qualified and adequately trained operating and programming staff for the operation of the Software;

(f)  training of operating or programming staff;

(g)  rectification of operator errors;

(h)  rectification of errors caused by an equipment fault;

(i)  equipment maintenance;

(j)  diagnosis or rectification of faults not associated with the Software;

(k)  furnishing or maintenance of accessories, attachments, supplies, consumables or associated items, whether or not manufactured or distributed by Radaro;

(l)  correction of errors arising directly or indirectly out of ShiftPixy's failure to comply with this Agreement or any other agreement with Radaro; or

(m)  correction of errors or defects which are the subject of a warranty under another agreement.

14.2 If ShiftPixy so requests in writing, Radaro may, at its sole option, provide any of the services referred to in clause 14.1, in which case ShiftPixy must pay Fees on a time and materials basis for providing such services, in accordance with the applicable terms (as the context requires) set out in item 3 of Schedule 3 (Fees).

## 15.  Updates and New Releases

15.1 The Support Services provided under this Agreement will include the provision of updates to and new releases (if any) of the Software made during the Licence Term.

15.2 Updates and new releases of the Software will be provided by Radaro to ShiftPixy as they become available. If ShiftPixy refuses to accept an update or new release of the Software (unless such update or new release is offered at no additional cost, in which case ShiftPixy must accept the update or new release):

   (a)   ShiftPixy may terminate this Agreement by providing written notice to Radaro, such notice to be provided within 14 days of Radaro notifying ShiftPixy of such update or new release and the additional fee associated therewith; or

   (b)   Radaro may decline to continue providing the Support Services, if ShiftPixy does not terminate this Agreement.

15.3 Where ShiftPixy accepts such an update or new release, this Agreement applies in all respects to that update or new release, to the extent that it is incorporated in or replaces the Software.

## 16.  Content Creation for ShiftPixy

16.1 Radaro may, upon request from ShiftPixy, provide services in the nature of the creation, development and implementation of specific Software customisation, ShiftPixy-specific customised templates and other commissioned content for use by ShiftPixy in connection with the Software, as may be agreed upon by the parties and subject to the payment determined in accordance with the applicable Fees set out in Schedule 3 (Fees), or as may otherwise be agreed between the parties in writing.

16.2 For the avoidance of doubt, any Intellectual Property Rights subsisting in content created by Radaro under clause 16.1 will be governed in accordance with clause 21.1(a).

16.3 If and to the extent that ShiftPixy requests or requires Radaro to include or incorporate any materials into such content referred to in clause 16.1, ShiftPixy warrants to Radaro that it has all necessary rights, licences and clearances to include, and to procure Radaro to include, such materials in the content to be developed.

## 17.  Additional Services

17.1 If ShiftPixy requires Radaro to provide any Specific Services or services not specifically provided for under this Agreement, its requirements must be set out in a Statement of Work pursuant to this Agreement.

17.2 A Statement of Work:

   (a)   must be in such format as Radaro may require from time to time; and

   (b)   will have no effect unless agreed to and signed by both Parties.

17.3   Each Statement of Work will be deemed to comprise the specific terms and conditions set out in that Statement of Work and incorporate appendices and/or attachments applicable to that Statement of Work.  To the extent of a conflict between one or more provisions of this Agreement and that Statement of Work, the conflicting provisions in the Statement of Work will prevail.

## 18. Confidentiality Obligations

18.1   Subject to clause 19, the Parties must ensure that any third parties with whom they share the other Party's Confidential Information:

(a)   use the Confidential Information for the purposes of carrying out their obligations and exercising their rights under this Agreement only for the purpose that the disclosing Party has pre-approved in writing (including under any Agreement entered into between the Parties);

(b)   at all times, hold all Confidential Information which comes into their possession in full and complete confidence;

(c)   establish and maintain effective security measures to safeguard Confidential Information from access or use not authorised under this Agreement;

(d)   take all steps necessary to restrict access to the Confidential Information and only disclose the Confidential Information to those within the recipient's organisation who (i) have a need to know it and (ii) are bound by obligations imposed by the disclosing Party as if those parties had entered into this Agreement directly with the relevant Party;

(e)   not copy, publish or circulate (or authorise or permit any person or entity to copy, publish or circulate) the Confidential Information except as permitted under this Agreement;

(f)   notify the disclosing Party if it becomes aware of a suspected or actual breach of confidence in relation to the Confidential Information; and

(g)   do anything reasonably required by the disclosing Party to restrain a breach of this Agreement or any infringement of its rights arising out of this Agreement.

## 19. Confidentiality Exclusions

19.1   The obligations of confidentiality under clause 18 do not apply in respect of information which:

(a)   is in or comes into the public domain in any way without a breach of a Party's obligations pursuant to this Agreement;

(b)   can be shown by a Party to have been legitimately known to it prior to its receipt from the other Party and which was not obtained under a duty of confidence from a third party;

(c)   is independently developed by a Party without any reliance on or use of the Confidential Information; or

(d)   is communicated in response to a valid order of a court, tribunal, and government body or otherwise as required by law or as necessary to establish any right pursuant to this Agreement.

Ex. 1 - 029
8:20-cv-01143-JVS-DFM

19.2  Before disclosing any Confidential Information as permitted under clause 19.1(d), the recipient must give reasonable prior notice to the disclosing Party of its intention to disclose the Confidential Information and the extent of the disclosure, to afford the disclosing Party an opportunity to prevent the disclosure of any Confidential Information.

19.3  The onus of establishing that an exception provided for under clause 19.1 applies falls on the Party seeking to disclose the Confidential Information.

## 20.  Return of Confidential Information

20.1  If a Party is requested at any time by the other Party, the Party receiving the request must at its own cost:

(a)  deliver to the requesting Party or destroy or erase all Confidential Information in its possession, power or control; and

(b)  provide a declaration in a form to be provided by the requesting Party that the receiving Party has complied with its obligation under clause 20.1(a)

## 21.  Intellectual Property Rights

21.1  The parties agree and acknowledge that:

(a)  all Intellectual Property Rights pertaining to the Software (including without limitation) all Radaro Background IP and all Radaro-developed Foreground IP will be owned by Radaro and licensed to ShiftPixy in accordance with clause 3.1 and the other terms of this Agreement; and

(b)  all ShiftPixy's Background IP will be owned by ShiftPixy and licensed to Radaro to the extent necessary to perform its obligations under this Agreement.

21.2  The parties acknowledge and agree that the trademark RADARO is the exclusive intellectual property of Radaro and the trademarks ShiftPixy and ZiPixy are the exclusive intellectual property of ShiftPixy and no licence to use each other's trademarks is granted to the parties under this Agreement.

21.3  If proceedings are brought or threatened by a third party against ShiftPixy alleging that ShiftPixy's use of the Software constitutes an infringement of Intellectual Property Rights, Radaro may at its option and at its own expense and subject to obtaining ShiftPixy's express consent (which must not be unreasonably withheld), conduct the defence of such proceedings. ShiftPixy must provide all necessary co-operation, information and assistance to Radaro in the conduct of the defence of such proceedings.

21.4  Subject to clauses 21.5 and 21.6, Radaro must indemnify ShiftPixy against Loss or liability incurred under any final judgment in proceedings brought by a third party against ShiftPixy which determine that ShiftPixy's use of the Software constitutes an infringement in the Territory of any Intellectual Property Rights.

21.5  Radaro will not be required to indemnify ShiftPixy as provided in clause 21.4 unless ShiftPixy:

(a)  notifies Radaro in writing as soon as practicable of any infringement, suspected infringement or alleged infringement;

(b)   provides express consent as set out in clause 21.3 and gives Radaro the option to conduct the defence of such a claim, including negotiations for settlement or compromise prior to the institution of legal proceedings;

(c)   provides Radaro with reasonable assistance in conducting the defence of such a claim; and

(d)   permits Radaro to modify, alter or substitute the infringing part of the Software at Radaro's own expense in order to avoid continuing infringement, or authorises Radaro to procure for ShiftPixy the authority to continue the use and possession of the infringing Software.

21.6  Radaro will not indemnify ShiftPixy to the extent that an infringement, suspected infringement or alleged infringement arises from:

(a)   use of the Software in combination by any means and in any form with other goods not specifically approved by Radaro;

(b)   use of the Software in a manner or for a purpose not reasonably contemplated or not authorised by Radaro;

(c)   modification of the Software without the prior written consent of Radaro; or

(d)   any transaction entered into by ShiftPixy relating to the Software without Radaro's prior consent in writing.

21.7  ShiftPixy indemnifies and must keep indemnified Radaro against any Loss directly arising out of a claim by a third party alleging such infringement if:

(a)   the claim arises from an event specified in clause 21.6; or

(b)   the ability of Radaro to defend the claim has been prejudiced by the failure of ShiftPixy to comply with any requirements of clauses 21.5 or 21.6.

## 22.  Insurance

22.1  The Parties agree to effect and maintain adequate insurance policies throughout the Licence Term in respect of potential liability, loss or damage arising at common law or under any statute in respect of claims for property damage, personal injury, public liability and professional indemnity relevant to the exercise of the Parties' respective rights and performance of their respective obligations under this Agreement.

22.2  ShiftPixy must (where this is commercial practice) use its best endeavours to nominate Radaro's interest in these insurance policies.

22.3  ShiftPixy must produce evidence on demand, to the satisfaction of Radaro, of the insurance effected and maintained in accordance with this clause 22.

## 23.  Liability

23.1  Except in relation to liability for personal injury or death, Radaro's liability for breach of this Agreement or any negligence will be limited, for all claims in aggregate, to paying an amount equal to the Fees that have been paid by ShiftPixy under this Agreement calculated as at the date of Radaro's breach or negligence.

Ex. 1 - 031
8:20-cv-01143-JVS-DFM

23.2 Except as required by law, Radaro will be under no liability to ShiftPixy in respect of Loss (including Consequential Loss) which may be suffered or incurred or which may arise directly or indirectly in any way in connection with this Agreement (including in respect of goods or services supplied pursuant to this Agreement).

23.3 Radaro must use best efforts to ensure that it selects and engages reputable host service providers and to seek commitments from those host service providers to minimise the likelihood and duration of any downtime for the hosting service and access to and use of Software.

23.4 Radaro will not be liable to ShiftPixy for any Loss occurring in the event that the hosting service on which the Software functions experiences disruptions or downtime.

23.5 Without limiting any other provision of this Agreement, ShiftPixy acknowledges that Radaro and the Software relies on hosting services provided by third parties.

23.6 Without limiting any other provision of this Agreement, ShiftPixy agrees and acknowledges that Radaro will not be liable to ShiftPixy for any Loss occurring due to failure malfunction or inadequacy of any system, equipment, hardware or software (other than the Software) used by ShiftPixy in connection with the operation of the Software.

23.7 ShiftPixy warrants to Radaro that it has not relied on any representation made by Radaro which has not been stated expressly in this Agreement, or upon any descriptions, illustrations or specifications in any way relating to the Software or the Services including catalogues, website or publicity material produced by Radaro. ShiftPixy acknowledges that to the extent Radaro has made any representation which is not otherwise expressly stated in this Agreement, ShiftPixy has been provided with an opportunity to independently verify the accuracy of that representation. Specifically:

(a) ShiftPixy represents and warrants to Radaro that it has completed its technical and commercial due diligence enquiries in respect of the Existing Radaro Software and has been given ample opportunity to conduct a trial and pilot the Existing Radaro Software (for instance, by way of video demonstrations, conference phone calls with Radaro's staff members and unlimited access to a fully functioning test account);

(b) ShiftPixy represents and warrants to Radaro that it is satisfied that it understands the current functionality and scope of the Existing Radaro Platform; and

(c) ShiftPixy acknowledges and agrees that the Software Instance will be directly based on the Existing Radaro Platform.

23.8 Subject to clause 23.1, each Party will at all times indemnify and must keep indemnified the other Party and its officers, employees and agents ("those indemnified") from and against any Loss or liability reasonably incurred or suffered by any of those indemnified arising from any proceedings against those indemnified where such Loss or liability was caused by:

(a) a breach by the indemnifying Party of its obligations under this Agreement; or

(b) any unlawful or negligent act or omission of the indemnifying Party.

23.9 ShiftPixy will, at all times, indemnify and must keep indemnified Radaro, its officers, employees and agents ("those indemnified") from and against any Loss (including Consequential Loss) or liability reasonably incurred or suffered by any of those

indemnified, arising from any proceedings against those indemnified where such Loss or liability was caused by acts or omissions of a User.

## 24. Non-compete, good faith and co-operation

24.1 The parties must communicate and co-operate with each other (acting reasonably and in good faith) for the purpose of minimising the risk of damaging or interfering with each other's independent and legitimate business prospects, clients and prospective clients (individually and collectively, a **Prospect**).

24.2 If a Party has a Prospect and wishes to enliven the non-competition rights and obligations of this clause 24, it must notify the other Party of the Prospect and provide reasonable and specific details of the Prospect, including reasonable evidence that the Prospect is tangible and legitimate (**Prospect Notice**).

24.3 Once a Party receives a Prospect Notice (**Recipient Party**), it must either:

    (a)    during the Licence Term, refrain from engaging in conduct (or allowing or permitting its Affiliates to engage in conduct) that would or would be likely to jeopardise, interfere with or damage, the other Party's interest in the Prospect that is the subject of the Prospect Notice; or

    (b)    if the Recipient Party has its own similar or competing Prospect (as the case may be), the Recipient Party must provide its own Prospect Notice to the other Party, in which case the parties must enter into good faith negotiations (acting reasonably) to determine by agreement in writing whether both Prospects will enliven the rights and obligations under this clause 24. For instance, if the two Prospects are separate subsidiaries of a large corporation, the parties may agree for the Prospects to co-exist for the purpose of this clause 24, in which case each Party will be bound by clause 24.3(a) in respect of the other Party's Prospect.

24.4 Without limiting the generality of any other clause in this Agreement, either Party may terminate this Agreement immediately by notice in writing to the other Party (the **breaching Party**) if the breaching Party is in breach of clause 24.3(a).

## 25. Termination

25.1 Without limiting the generality of any other clause in this Agreement, either Party (the **non-breaching Party**) may terminate this Agreement immediately by notice in writing to the other Party (the **breaching Party**) if:

    (a)    the breaching Party is in material breach of any term of this Agreement and such breach is not remedied within 14 days of notification by the non-breaching Party;

    (b)    the breaching Party threatens or resolves to become, or is in jeopardy of becoming, subject to any form of insolvency administration or, in the case of a partnership, dissolves, threatens or resolves to dissolve or is in jeopardy of dissolving; or

    (c)    the breaching Party ceases or threatens to cease conducting its business in the normal manner.

25.2 ShiftPixy may terminate this Agreement for convenience and without cause by:

    (a)     providing 30 days written notice to Radaro; and

    (b)     paying the Exit Fee to Radaro, being a sum equal to 30% of the estimated total value of this Agreement.

25.3  Termination under clause 25.2 is only effective from the date that the Exit Fee is paid to Radaro.

25.4  If notice is given to ShiftPixy pursuant to clause 25.1, Radaro may, in addition to terminating the Agreement:

    (a)     terminate access to the Software;

    (b)     retain any money paid;

    (c)     charge a reasonable sum for work performed in respect of which no sum has been previously charged;

    (d)     be regarded as discharged from any further obligations under this Agreement; and

    (e)     pursue any additional or alternative remedies provided by law.

25.5  ShiftPixy agrees that on expiry or termination of this Agreement for any reason, all of its rights in respect of the Software (including its right to access the Software) and the Services will end.

25.6  Upon termination or expiry of this Agreement, if ShiftPixy requests, and subject to ShiftPixy having discharged all of its obligations under this Agreement, Radaro will, within one month after termination or expiry of this Agreement, provide ShiftPixy with a file containing ShiftPixy Customer Data.

25.7  ShiftPixy agrees and acknowledges that Radaro has no obligation to retain any information relating to ShiftPixy (including ShiftPixy Customer Data) and that all such information may be irretrievably deleted by the Radaro after one month from the date of any suspension, termination or expiry of this Agreement.

## 26. Force Majeure

26.1  Neither Party will be liable for any delay or failure to perform its obligations pursuant to this Agreement if such delay is due to Force Majeure.

26.2  If a Party is prevented in whole or in part from carrying out its obligations under this Agreement as a result of Force Majeure, it must promptly notify the other Party.

26.3  If a delay or failure of a Party to perform its obligations is caused or anticipated due to Force Majeure, the performance of that Party's obligations will be suspended.

26.4  If a delay or failure by a Party to perform its obligations due to Force Majeure exceeds 60 days, either Party may immediately terminate the Agreement on providing notice in writing to the other Party.

26.5  If this Agreement is terminated pursuant to clause 26.4 , Radaro will refund moneys previously paid by ShiftPixy pursuant to this Agreement for goods or services not provided by Radaro to ShiftPixy.

26.6  An event of Force Majeure does not relieve ShiftPixy from the obligation under this Agreement to pay money in a timely manner which arose prior to the occurrence of such event.

## 27.  Sub-Contracts

27.1  Radaro may from time to time engage others (whether or not operating under a corporate structure) on a subcontract or consultancy basis and may sub-contract for the performance of this Agreement or any part of this Agreement.

27.2  Radaro will at all times remain liable for the actions of any subcontractors or consultants ("Contractor") it engages, such that an act or omission by any such Contractor which would be a breach of this Agreement were it an act or omission of Radaro will be deemed a breach by Radaro.

## 28.  Assignment and Novation

28.1  The benefit of this Agreement must not be assigned by ShiftPixy without Radaro's prior written consent.  Radaro may (at its complete discretion) assign or novate this Agreement in favour of a third party, and ShiftPixy must do all things necessary to facilitate this assignment or novation.

## 29.  Waiver

29.1  No right under this Agreement will be deemed to be waived except by notice in writing signed by the waiving Party.

29.2  Any waiver made by either Party pursuant to clause 29.1 will not prejudice its rights in respect of any subsequent breach of the Agreement by the other Party.

## 30.  Variation

30.1  The provisions of this Agreement must not be varied, except by agreement in writing signed by the Parties.

30.2  If either Party wishes to vary the Agreement, the proposing Party must submit a copy of the proposed variations to the other Party ("the receiving Party"), specifying a reasonable period in which the receiving Party is to provide written notice of acceptance or rejection of the proposal.

30.3  If the receiving Party accepts the variations, the Agreement will be deemed to be so amended from the date of acceptance.

30.4  If the receiving Party rejects the proposed variations, each Party must perform the Agreement in accordance with the unvaried terms.

## 31.  Dispute Resolution

31.1  The procedure set out in this clause must be followed in relation to the resolution of a dispute concerning the interpretation of a term this Agreement or of the Parties' rights or obligations pursuant to this Agreement ("Dispute"), unless clause 25.1(a) applies.

31.2  Upon any Dispute arising, a Party may give written notice to the other Party that a Dispute exists ("Dispute Notice").

Ex. 1 - 035

31.3   The Dispute Notice will provide the recipient with the full particulars of the matters in Dispute.

31.4   The timetable and process for resolving a Dispute pursuant to a Dispute Notice is as follows:

(a)   within 5 Business Days of receipt of a Dispute Notice, the recipient of such a Notice will hold discussions in good faith with the sender of the Dispute Notice in an attempt to resolve the Dispute;

(b)   if the Dispute is not resolved within 20 days of the commencement of the meeting referred to in the previous sub-clause or if the meeting referred to in the previous sub-clause has not taken place within the 5 day period, the parties to the Dispute will refer the matter to mediation;

(c)   within 5 Business Days following the expiry of the relevant period in the previous sub-clause, the parties to the Dispute must attempt to agree on the appointment of a mediator. In the absence of agreement on the appointment of a mediator, a mediator is to be appointed by JAMS, with the costs of the mediation to be borne equally by the parties to the Dispute;

(d)   the parties to the Dispute will use their best endeavours to ensure the mediation takes place within 30 days of a mediator being appointed; and

(e)   any mediation that takes place pursuant to the operation of this clause is to take place in Irvine, California, United States of America.

31.5   Except for the purpose of obtaining urgent interlocutory or declaratory relief from a court of competent jurisdiction, no Party will commence any proceedings in any court, tribunals or otherwise without first providing a Dispute Notice and complying with the dispute resolution process set out in this clause.

31.6   If the dispute resolution process set out in this clause is followed and a resolution cannot be reached between the Parties acting reasonably, the Parties will be deemed to have complied with the dispute resolution process set out in this clause for the purpose of clause 31.5.

## 32.   Miscellaneous

32.1   Any express statement of a right of Radaro under this Agreement is without prejudice to any other right of Radaro expressly stated in this Agreement or existing at law.

32.2   Subject to any provision to the contrary, this Agreement will enure to the benefit of and be binding upon the Parties and their successors, trustees, permitted assigns or receivers, but will not enure to the benefit of any other persons.

32.3   The covenants, conditions and provisions of this Agreement which are capable of having effect after the expiration of the Agreement will remain in full force and effect following the expiration of the Agreement.

32.4   If any provision of this Agreement is held invalid, unenforceable or illegal for any reason, the Agreement will remain otherwise in full force apart from such provision which will be deemed deleted.

32.5   This Agreement constitutes the entire agreement between the Parties and supersedes all prior representations, agreements, statements and understandings, whether verbal or in writing.

32.6   The documents comprising this Agreement will be read in the following order of precedence:

(a)     the clauses of this Agreement;

(b)     the Schedules.

32.7   Where any conflict occurs between the provisions contained in two or more of the documents forming this Agreement, the document lower in the order of precedence will, where possible, be read down to resolve such conflict. If the conflict remains incapable of resolution by reading down, the conflicting provisions will be severed from the document lower in the order of precedence without otherwise diminishing the enforceability of the remaining provisions of that document.

32.8   This Agreement will be governed in all respects by the laws of California, United States of America. The parties irrevocably submit to the non-exclusive jurisdiction of the courts of the Southern District of California, United States of America.

## 33.  Notices

33.1   Notices under this Agreement may be delivered by hand, by mail, by email or by facsimile to the addresses specified in the Schedule.

33.2   Notice will be deemed given:

(a)     in the case of hand delivery, upon written acknowledgment of receipt by an officer or other duly authorised employee, agent or representative of the receiving Party;

(b)     in the case of posting by registered post ten Business Days after posting where the notice is sent within the United States or ten Business Days in any other case;

(c)     in the case of facsimile, upon receipt of transmission if received on a Business Day or otherwise at the commencement of the first Business Day following transmission;

(d)     in the case of email, when denoted in an automated receipt notification received by the sender or upon acknowledgment of the other party.

## 34.   Execution

This Agreement may be executed in counterparts by the respective Parties, each of which when so executed will be deemed to be an original and all of which taken together will constitute one and the same agreement, provided that this Agreement will be of no force and effect until the counterparts are exchanged (scanned copies will suffice for the purpose of this clause).

**Executed as an Agreement**

**EXECUTED by RADARO INC.** in )
accordance with its constituent documents: )
)

_____
Director/Secretary (Signature)

BRENTON GILL
Full name (please print)

17 / 09 / 2019.
Date

_____
Director/Secretary (Signature)

Arie Spivak
Full name (please print)

17 / 09 / 2019
Date

**EXECUTED by SHIFTPIXY INC.** in )
accordance with its constituent documents : )
)

X _____
Director/Secretary (Signature)

Scott Absher
Full name (please print)

9 / 16 / 2019
Date

_____
Director/Secretary (Signature)

_____
Full name (please print)

_____
Date

# SCHEDULE 1

## Key details

| | Item | Detail |
|---|---|---|
| 1. | ShiftPixy | ShiftPixy Inc.<br>of 1 Venture, Irvine, California 92618, United States of America |
| 2. | ShiftPixy Authorised Contact | *Scott Absher*<br><br>*Chief Executive Officer*<br><br>scott.absher@shiftpixy.com |
| 3. | ShiftPixy business | A unified software platform known as "ShiftPixy" to manage and process employee administrative duties. |
| 4. | Commencement Date | 22nd May 2019 |
| 5. | Initial Term | 3 years from the Commencement Date |
| 6. | Notices | To Radaro:<br><br>Attention:<br><br>Fax:<br><br>Email:<br><br>To ShiftPixy:<br><br>Attention: Scott Absher<br>ShiftPixy, Inc.<br>1 Venture, Suite 150<br>Irvine CA 92618<br><br>Fax:<br><br>Email: |

# SCHEDULE 2

## Software and Services

1.     **Description of functionality and features of the Software:**

(a)     Driver mobile software applications, including the following features:

     (i)       iOS and Android applications

     (ii)      Start of day workflow

     (iii)     Checklists

     (iv)      Pre-inspection: 5 photos, sign on glass and comments

     (v)       Proof of delivery:  5 photos, sign on glass and comments

     (vi)      Driver created jobs

     (vii)     Advanced completion codes

     (viii)    New feature developments and improvements (as generally released by Radaro in its ordinary course of business)

(b)     Management Portal feauture, including:

     (i)       Live Driver management, including Driver smoothing and variable capacity

     (ii)      Live Google API access, including live traffic estimated times of arrival

     (iii)     Customizable features, including:

          A.       Labels

          B.       Termination codes (up to 10)

          C.       Advanced Completion Codes (up to 10)

     (iv)      Radaro route optimization

     (v)       PODs – 5 photos, sign on glass, Driver comments

     (vi)      Radaro individual job reports (individual) including execution data, mileage, job audits and customer feedback workflow

     (vii)     Radaro portal reporting (dashboard and CSV download)

(c)     Customer Notifications

     (i)       Whitelabeled customer SMS

     (ii)      Customisable SMS text and short form tracking portal link

     (iii)     Whitelabeled customer tracking portal (SMS and email communication options)

      (iv)      Customer feedback (5-star rating and customer comments)

      (v)      Customer re-route – update customer tracking to any website of your choice

      (vi)      Sub-branding – the ability to sub-brand deliveries

      (vii)      Text message "after delivery completion" – 1 hour and 24 hour

(d)      Management logins

(e)      Call center logins

(f)      24 Hour Support - Zendesk/email

(g)      Business hours phone support

(h)      Customer tracking notifications

(i)      Customer feedback

**2.**      **Description of method of hosting**

The Parties agree that the Software will be hosted in and maintained in Amazon's "Amazon Web Services System" located in North America.

3.      Services

| Service Type | Duration / timing | Resources / work involved |
|---|---|---|
| Non-exclusive licence of Existing Radaro Software | Build Phase only | Support "quick wins" |
| Software instance initial build services ("**Instance Build Services**") | Build Phase only | |
| Initial scoping works in connection with integration of OLO platform ("**OLO Scoping Services**") | Build Phase only (the Parties may enter into a Statement of Work for further related works) | |
| Non-exclusive licence of Software | Licence Term | |
| Ongoing platform maintenance | Licence Term | Dedicated technical resources |
| Synchronisation to Radaro's Existing Platform (as updated and modified from time to time) | Licence Term | Cross-function technical resources |
| Future Radaro releases to core enhancements | Licence Term | Integration of and updates of core platform enhancements |
| Ongoing technical support | Licence Term | Dedicated Technical Resources |
| Train-the-trainer | Licence Term | Sales, pilot and onboarding |
| Helpdesk | Licence Term | 24/7 Zendesk Ticketing |
| Phone support | Licence Term | As determined by ShiftPixy needs beyond internal support structures, subject to Schedule 3 – Specific Service Fees |
| Account management support | Licence Term | Account manager |
| Program management support | Licence Term | Program management |
| Executive support | Licence Term | USA/Australian based executive team |
| Quick win support | Licence Term | Team to enable branding, sales, setup and launch |
| Reporting | Licence Term | Access to reporting dashboard and exporting |
| Included Driver apps usage | Licence Term | Up to 500 Driver Apps |
| * AWS Subscription | Licence Term | Up to $5,000 of Amazon Web Services server infrastructure hosting.  Excess usage passed on directly to ShiftPixy. |
| ** Google API | Licence Term | Direct connectivity into Google API's through Radaro architecture |
| 20 hours of development | Licence Term | Included Per Month |

*Radaro will remit the Amazon Web Services server hosting fees to ShiftPixy, on a direct invoice basis (i.e. Radaro will not charge any fee of its own) for usage in excess of $5,000 per calendar month.

**ShiftPixy must set up a dedicated Google developer account against the Software.  This account will incur the direct costs of Google's API against ShiftPixy's usage and is directly payable by ShiftPixy to Google.

### 4. Description of Specific Services (other than access to Software) and Support Services

| Specific Service | Details / timeframes |
|---|---|
| Bespoke Software development and/or third party integration services:<br><br>• Formal documentation of strategic consulting and scoping requirements for "plan and analyse phase" for proposed bespoke development and third party integration<br>• Actual bespoke development work or third party integration work | Based on mutually agreed scope, process and timeframe |
| Travel and services associated with:<br><br>• on-site end User support;<br>• third party development;<br>• on-site User resource training – remote office<br>• on-site client travel to support "quick wins" and on-boarding<br>• on-site client travel to support sales initiatives | Based on mutually agreed scope, process and timeframe |
| Customised report development, including business intelligence and performance reporting | Based on mutually agreed scope, process and timeframe |

**Support Services**

The Support Services will include telephone, email and Zendesk support to assist ShiftPixy with use of the Software as set out below:

| Severity Level | Description | Availability hours | Response time |
|---|---|---|---|
| 1 | Routine query on general issues and troubleshooting | 9am to 5pm Monday to Friday (excluding public and bank holidays) for direct Radaro telephone support<br><br>24 hour x 7 days a week email notification at support@radaro.com.au<br><br>24 hour x 7 days a week Zendesk ticketing platform available through Radaro web portal and Radaro iOS and Android apps | Email and / or telephone response within 48 hours (during business hours) acknowledging the issue and indicating what follow up action is being taken. |
| 2 | Minor issues not affecting operation | 9am to 5pm Monday to Friday (excluding public and bank holidays) for direct Radaro telephone support<br><br>24 hour x 7 days a week email notification at support@radaro.com.au<br><br>24 hour x 7 days a week Zendesk ticketing platform available through Radaro web portal and Radaro iOS and Android apps | Email and / or telephone response within 24 hours (during business hours) acknowledging the issue and indicating what follow up action is being taken. |
| 3 | Serious issues involving partial operational failure | 9am to 5pm Monday to Friday (excluding public and bank holidays) for direct Radaro telephone support<br><br>24 hour x 7 days a week email notification at support@radaro.com.au<br><br>24 hour x 7 days a week Zendesk ticketing platform available through Radaro web portal and Radaro iOS and Android apps | Email and / or Telephone response within 12 hours (during business hours) acknowledging the issue and indicating what follow up action is being taken. |

| 4 | Critical issues involving total operational failure | 9am to 5pm Monday to Friday (excluding public and bank holidays) for direct Radaro telephone support<br><br>24 hour x 7 days a week email notification at support@radaro.com.au<br><br>24 hour x 7 days a week Zendesk ticketing platform available through Radaro web portal and Radaro iOS and Android apps | Telephone and email response within 4 hours (during business hours) acknowledging the issue and indicating what follow up action is being taken. |
|---|---|---|---|

### 5.   Compatible Browser and Mobile Phone Types

**Browser**
The Software may be used with modern, up-to-date versions of browsers including Google Chrome, Mozilla Firefox and Microsoft Edge.

The Software must not be used with Internet Explorer.

**Driver Phones**
The Software may be used with Android and Apple phones. It is recommended that phones are as new as possible for optimised performance.

**Apple IOS**
The Software may also be used with an IPhone 6S in addition to newer IPhone models.

**Android**
Android phones vary in hardware capabilities across manufacturers and as such Radaro makes no guarantees that the Software will operate on Android phones that are older than the Android 7 phone. Devices that use Android 7 and newer Android models have been found to operate correctly with the Software.

Radaro may vary the compatibility guidelines set out in this item 5 from time to time in the ordinary course of industry best practice.

# SCHEDULE 3

**Fees**

**1.    Instance Build Fee**

(a)    The parties acknowledge and agree that ShiftPixy has paid Radaro the sum of $500,000 on or around 22 March 2019 in consideration of Radaro providing:

(i)    the Instance Build Services; and

(ii)    the OLO Scoping Services (notwithstanding specific provisions relating to third party integration services set out in clause 3 of this Schedule)

during the Build Phase

(the **Instance Build Fee**).

(b)    Radaro commenced Instance Build Services and the OLO Scoping Services on or around 22 March 2019 and will use its best commercial endeavours to complete the:

(i)    Software Instance build; and

(ii)    Statement of Work in respect of the integration of the OLO platform with the Software

by 22 May 2019 (**Build Phase**).

**2.    Licence Fees**

The Licence Fees are payable by ShiftPixy to Radaro as follows:

| Payment Schedule | Timing for Payment | Amount |
|---|---|---|
| 12 Month Licence Fee<br><br>Year 1 | Payable by ShiftPixy monthly in advance.<br><br>Radaro will issue an invoice on the 1st day of each calendar month.<br><br>Payment is due within 14 days of the date of the invoice. | $75,000 per month |
| 12 Month Licence Fee plus 10% annual increase<br><br>Year 2 | | $82,500 per month |
| 12 Month Licence Fee plus 10% annual increase<br><br>Year 3 | | $90,800 per month |

3.    **Specific Services Fees**

The Specific Services Fees are payable by ShiftPixy to Radaro if ShiftPixy requests the Specific Services and in accordance with the following terms:

| Specific Services | Timing for Payment | Specific Services Fee Amount |
|---|---|---|
| **Bespoke Software development and/or third-party integration services**<br>The parties must enter into a Statement of Work for the bespoke Software development and/or third party integration services (including in respect of OLO): | | |
| (a) Formal documentation of strategic consulting and scoping requirements for "plan and analyse phase" for proposed bespoke development and third party integration | Payment is due within 14 days of the date of the invoice issued by Radaro to ShiftPixy. | $250 per hour |
| (b) Actual bespoke development work or third party integration work | Payment is due within 14 days of the date of the invoice issued by Radaro to ShiftPixy. | $200 per hour |
| Travel expenses associated with:<br><br>On-site visits, including:<br><br>• client visits<br>• sales support visits<br>• ShiftPixy offices<br>• 3rd party partner visits | Payment is due within 14 days of the date of the invoice issued by Radaro to ShiftPixy. | $750 per day (or part thereof)<br><br>Out of pocket travel, accommodation and transit costs |
| Customised report development, including business intelligence and performance reporting | Payment is due within 14 days of the date of the invoice issued by Radaro to ShiftPixy. | $200 per hour |
| Ongoing end User technical support | Payment is due within 14 days of the date of the invoice issued by Radaro to ShiftPixy. | If and where required by mutual agreement |
| Ongoing end User driver support | Payment is due within 14 days of the date of the invoice issued by Radaro to ShiftPixy. | If and where required by mutual agreement |
| User phone support | Payment is due within 14 days of the date of the invoice issued by Radaro to ShiftPixy. | If and where required by mutual agreement |

4.    **Driver Usage Account Fees**

A reference to an "active driver profile" in this item 4 means a Driver profile that is set up in the Software until such time as it is communicated as inactive.

The Driver Usage Account Fees are payable by ShiftPixy to Radaro as follows:

| Overall Driver Numbers on Customer's | Amount | Description |
|---|---|---|
| **0 -500 Drivers** | $0.00 | Included in monthly licence agreement to further support initial ramp |
| **500 – 1000  Drivers** | $10.50 / per Driver  / per calendar month | Based on number of "active driver profiles" during each calendar  month |
| **1000 – 2000  Drivers** | $8.50 / per Driver  / per calendar month | Based on number of "active driver profiles" during each calendar month |
| **2000 – 3000  Drivers** | $7.50 / per Driver  / per calendar month | Based on number of "active driver profiles" during each calendar month |
| **3000 – 6000  Drivers** | $6.50 / per Driver  / per calendar month | Based on number of "active driver profiles" during each calendar month |
| **More than 6000 Drivers** | $5 / per Driver / per calendar month | Based on number of "active driver profiles" during each calendar month |

5.    **Method of payment**

Bank transfer